OPINION *Page 2 
{¶ 1} Appellant, Kenneth R. Boggs, appeals from the trial court's distribution assets in the final divorce decree. Appellee is Tina Boggs.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This appeal, in relevant part, pertains to the trial court's consideration and distribution of several property interests including a wrongful termination lawsuit settlement, a company stock withdrawal, retirement accounts and real estate subject to a general warranty deed. The pertinent facts are as follows:
 {¶ 3} Defendant-Appellant, Kenneth Boggs and Plaintiff-Appellee, Tina Boggs were married on October 6, 1990, in Las Vegas, Nevada. Appellant is a duly licensed attorney in the State of Ohio, certified in 1980, with a general solo practice. Appellee has professional experience in customer service and the implementation of pharmaceutical software.
 {¶ 4} From 1997 until October of 2003, appellee worked for Cardinal Health, Inc. In the course of her employment appellee purchased company stock options and contributed to a 401(K) retirement account.
 {¶ 5} Shortly after the parties were married they purchased a home located at 5066 Cascade Drive in Powell, Ohio. The monthly mortgage payments on the property were approximately two thousand five hundred and fifty (2,550.00) dollars. Both parties stopped making mortgage payments in December of 2002. The mortgage on the property remained in default until the foreclosure sale in March of 2005.
 {¶ 6} On January 17, 2003, appellee liquidated Cardinal Health, Inc. stock and received a check in the amount of seventeen thousand ($17,000.00) dollars. *Page 3 
 {¶ 7} In February of 2003, the appellant and appellee separated. Appellant moved out of the marital residence. Appellant's monthly rent, at his new residence, was approximately one thousand and one hundred and fifty ($1,150.00) dollars per month.
 {¶ 8} Thereafter, on or about, February 8, 2003, appellee endorsed the seventeen thousand ($17,000.00) dollar check to a friend for execution. The friend cashed the check and gave appellee the balance.
 {¶ 9} In March of 2003, appellee moved out of the marital residence into a condominium paying approximately one thousand and four hundred ($1,400.00) dollars in monthly rent. Both appellee and appellant removed and retained household goods from the Cascade Drive property.
 {¶ 10} On June 2, 2003, the parties filed a verified joint Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court, Southern District of Ohio, Case Number 03-58213. The bankruptcy petition listed the household goods as having a total estimated value of seven thousand and six hundred ($7,600.00) dollars. The petition also listed appellant's net monthly income after taxes and social security as being three thousand and one hundred and forty ($3,140.00) dollars, and appellee's monthly net income after payroll taxes, social security and insurance deductions, as being two thousand and five hundred ($2,500.00) dollars.
 {¶ 11} The bankruptcy petition additionally stated that each party had an automobile lease agreement. Appellee had a three year lease, from March 28, 2002 until March 1, 2005, for a 2002 Cadillac Seville STS. Appellant had a three year lease, from March 1, 2002 until March 1, 2005, for a GMC, DTS. *Page 4 
 {¶ 12} On June 4, 2003, a foreclosure complaint was filed against the Cascade Drive property in Delaware County Court of Common Pleas, Case Number 03-CVE-06-387. On or about July 10, 2003, the foreclosure action was stayed pursuant to the federal bankruptcy action.
 {¶ 13} In September of 2003, the couples' joint debt, of approximately four hundred and forty thousand, six hundred and seventy nine ($440,679.00) dollars, was discharged by the Bankruptcy Court. Appellee was permitted to retain her Cardinal Health Inc. 401(k).
 {¶ 14} On October 22, 2003, appellee's employment with Cardinal Health was terminated. Appellee filed a complaint for wrongful termination against Cardinal Health Inc., in the United States District Court, Southern District of Ohio, Case Number C2-04-441. Appellant, as counsel of record, filed the initial wrongful termination complaint on behalf of the Appellee. However, appellee subsequently retained other counsel for representation.
 {¶ 15} On January 8, 2004, the Bankruptcy Trustee filed an abandonment of the parties' real property located at 5066 Cascade Drive in Powell, Ohio. In the notice the trustee stated that "[t]he trustee believes that there is not equity in the aforementioned debtor's property and/or that this asset is of inconsequential or burdensome value to the bankruptcy estate". The trustee further stated that "the debtors are now in default upon the Promissory Note and that there is due and owing a balance of $292,535.34 plus interest at 6.75% per annum from December 1, 2002. The debtors are entitled to a personal homestead exemption in the amount of $10,000.00. The approximate value of the real estate described herein is $385,000.00." *Page 5 
 {¶ 16} On March 4, 2004, the Bankruptcy Trustee recommended that the action be closed as being a "no asset" case.
 {¶ 17} In March of 2004, appellee was unemployed and unable to pay her monthly expenses. As a result appellee moved back into the marital residence on Cascade Drive. Upon returning to the marital residence, appellee paid all the outstanding debts on the property including utilities etc., with the exception of the outstanding mortgage payments. Additionally, necessary repairs were made and financed by both appellee and appellant. However, the property remained in foreclosure.
 {¶ 18} In August of 2004, appellee transferred the Cardinal Health Inc. 401(K) account from Cardinal Health to First investments.[1] At the time of the transfer, the account balance was approximately one hundred and one thousand ($101,000.00) dollars.
 {¶ 19} In September of 2004, appellee withdrew sixty-five thousand ($65,000.00) from the First Investment IRA account. The withdrawal resulted in a total tax liability of approximately twenty thousand ($20,000.00) dollars. An initial withholding of approximately nine thousand ($9,000.00) was made at the time of withdrawal. On or about, September 18, 2004, appellee deposited fifty five thousand two hundred and forty seven dollars and thirty three cents ($55,247.33) into her individual Telhio Credit Union account. Thereafter, approximately eleven thousand, two hundred, and ninety seven ($11,297.00) dollars in tax liability plus penalties remained due and owing. *Page 6 
 {¶ 20} From March of 2003 until October of 2004, appellant provided minimal support for appellee in the following manner: the payment of six (6) months of car insurance at eighty ($80.00) dollars per payment and the purchase of new tires for her vehicle in the amount of one thousand and seven hundred ($1,700.00) dollars. Otherwise both parties maintained separate households and expenses. Furthermore, during appellee's unemployment, both parties contributed to the payment of COBRA medical insurance coverage.
 {¶ 21} On September 13, 2004, appellee began employment as an implementation specialist with Amerisource Bergen. At her new employment appellee earned an annual salary of sixty thousand ($60,000.00) dollars plus benefits. Appellee's net monthly income was three thousand, eight hundred and nineteen ($3,819.46) dollars and forty six cents. Additionally, appellee placed appellant on her medical benefits plan with Amerisource.
 {¶ 22} From September 18, 2004, through approximately October 12, 2004, the available IRA withdrawal of approximately forty-five thousand ($45,000.00) dollars was used solely by appellee for credit card payments, medical bills, a car lease, attorney's fees and other miscellaneous living expenses. Specifically, on or about October 6, 2004, twenty-nine thousand ($29,000.00) dollars was used to finance a four year lease of a Cadillac. Additionally, approximately seven thousand and five hundred ($7,500.00) dollars was distributed for attorney's fees including five thousand ($5,000.00) dollars for representation in the wrongful termination action and two thousand and five hundred ($2,500.00) dollars as a retainer fee for representation in the divorce action. The remaining available balance was apparently used for miscellaneous living expenses. *Page 7 
 {¶ 23} On October 15, 2004, appellee, represented by retained counsel, filed a complaint for divorce and motion for sale of the marital residence. On December 16, 2004, appellant, represented by retained counsel, filed an answer, counterclaim for divorce and motion for spousal support.
 {¶ 24} On October 18, 2004, the trial court issued a standard restraining order against the appellant. On December 16, 2004, the trial court issued the identical, standard restraining order against the appellee. Both restraining orders prohibited either party from misappropriating marital funds or property.
 {¶ 25} In December of 2004, appellant moved into a residence located at Southwest Becks Knob Road in Lancaster, Ohio. At the time, appellant was not eligible for financing due to the bankruptcy action. As a result, he asked Keanon and Bonita Slade to purchase the property on his behalf. Appellant and the Slades then executed a lease with option to purchase agreement. In accordance with the agreement, appellant was obligated to pay monthly the first and second mortgage amount on the property in the approximate amount of one thousand and seven hundred ($1,700.00) dollars. Further, in order to execute the purchase option, appellant was required to pay a five thousand ($5,000.00) dollar down payment on or before December 31, 2005, and finance the remaining mortgage balances on the home. Appellant also prepared a general warranty deed for the property which was executed by the Slades on December 26, 2004, but was not duly recorded. Appellant did not pay the five thousand ($5,000.00) down payment, and neither Keanon Slade nor Bonita Slade received any consideration for the transfer of title by general warranty deed to appellant. *Page 8 
 {¶ 26} Appellant defaulted on the Becks Knob lease and did not exercise his purchase option. Appellant also claimed to have made approximately twenty-thousand ($20,000.00) dollars worth of improvements to the property. Appellant remained at the residence while being in default on the lease payments until on or about August 28, 2006.
 {¶ 27} On December 17, 2004, the trial court in this divorce action held a pre-trial status conference. The trial court ordered a settlement conference to occur on March 16, 2005, and a trial date for March 28, 2005. No temporary spousal support was awarded to either party.
 {¶ 28} On March 3, 2005, appellant was served with an eviction notice by the Slades for his address at Southwest Becks Knob Road in Lancaster, Ohio, for failure to pay rent pursuant to the lease agreement. Thereafter, the Slades filed a forcible entry and detainer action in the Municipal Court of Fairfield County, Case Number 05CVG02636.
 {¶ 29} On March 17, 2005, in this divorce action, the parties were ordered to participate in mediation and the trial date was continued to May 17, 2005.
 {¶ 30} On April 14, 2005, by order of the trial court appellant's request for spousal support was denied and each party was ordered to pay their individual car payments, property rent, and necessary living expenses.
 {¶ 31} On May 5, 2005, appellant, by written motion, moved to continue the May 17, 2005, hearing for medical reasons. Specifically, the memorandum in support stated that appellant was scheduled for surgery. Upon motion of appellant, the final divorce hearing was continued to July 12, 2005. However, on May 17, 2005, appellant appeared *Page 9 
in Federal District Court. A photo of appellant's appearance was published in a local newspaper and introduced in the divorce hearing.
 {¶ 32} On September 2, 2005, appellee executed a settlement agreement with Cardinal Health Inc. in the wrongful termination action. The settlement included, in part, compensation for lost wages. The terms of the settlement were sealed both in the common pleas court's general and domestic relations divisions.
 {¶ 33} On September 13, 2005, the divorce trial was continued until October 20, 2005.
 {¶ 34} On September 22, 2005, appellee, by and through counsel moved for an order granting money for reasonable attorney's fees. In support, appellee stated that the divorce matters had taken "an enormous amount of time, and discovery has been extremely problematic, due to conduct of defendant." On October 4, 2005, appellant's attorney filed a similar motion for attorney's fees for appellee's failure to appear for a deposition.
 {¶ 35} On November 3, 2005, by judgment entry, the municipal court, in the forcible entry and detainer action, denied the Slade's request for a writ of restitution due to the existence of the general warranty deed and the legal theory of estoppel by deed. In the decision, the court held as follows: "While it appears from the evidence that Plaintiff (Keanon Slade), may not have intended to deed the property to Defendant (Kenneth Boggs) in December of 2004, it is still his burden to show that he is the owner of the property in question and has the right to remove the Defendant. In that respect the court will not question the validity of the deed (general warranty deed), but rather look only upon the face of the document. Any question of fraud or improper conduct on *Page 10 
behalf of the Defendant (appellant) in acquiring the title to the property is outside the jurisdiction of this court and is more appropriately addressed in another action before another court. Accordingly the court finds for the Defendant." After the municipal court's decision was entered, appellant continued to reside at the Becks Knob property without paying the first and second mortgage as set forth in the lease agreement.
 {¶ 36} On December 13, 2005, in the divorce action, appellant's counsel was permitted to withdraw. Appellant appeared pro se for the remainder of the divorce litigation.
 {¶ 37} On January 27, 2006, in the divorce action, by order of the trial court, Cardinal Health, Inc. was included as a third party defendant. Additionally, the trial court issued a protective order and an order to seal the documents pertaining to the Cardinal Health Inc., settlement agreement. Finally, the trial court ordered the divorce trial to commence on March 14, 2006.
 {¶ 38} On March 14, 2006 and March 15, 2006, a magistrate heard evidence in the divorce action. On March 15, 2006, appellant filed a motion for findings of fact and conclusions of law.
 {¶ 39} On March 23, 2006, appellee filed a motion to present further evidence, arguing in support that appellant had failed to disclose during pre-trial discovery, and trial, that he had an ownership interest in the Becks Knob property. The trial court granted the motion and set the matter for hearing before a magistrate on April 7, 2006.
 {¶ 40} On April 7, 2006, the magistrate conducted the hearing. During the hearing appellee called appellant to testify as on cross regarding his ownership interest in the Becks Knob property. Appellee also presented the general warranty deed to the *Page 11 
Becks Knob property and the municipal court decision showing appellant's purported ownership interest.
 {¶ 41} On May 25, 2006, the magistrate issued findings of fact and conclusions of law and a decision. In the decision, the magistrate indicated that she had reviewed the Cardinal Health settlement and found that it included compensation for emotional distress, personal injury, attorney's fees and lost wages which were earned by the appellee after the couple's separation in March of 2003. The magistrate noted that the actual settlement agreement was sealed since the appellee contractually agreed to keep the settlement confidential. The magistrate found that the Cardinal Health settlement was the "sole separate property" of the appellee.
 {¶ 42} The magistrate found that the parties had obtained a joint discharge in bankruptcy on September 23, 2003 and all the known debts of the parties were discharged. The magistrate found that since that date the parties had not incurred any joint debt but had accrued debt in their individual names. Therefore the magistrate ordered the parties to each be responsible for their own debts.
 {¶ 43} The magistrate found that the parties each had a vehicle that they were exclusively using and making payments on.
 {¶ 44} The magistrate also found that the parties owned a marital home which was sold in 2005 for three hundred and thirty thousand ($330,000.00) dollars and that there was no residual debt after the sale of the home.
 {¶ 45} In relevant part, the magistrate further held that on March 14, 2006, appellant testified that he owned no real estate. However at the post trial hearing the evidence established, that the appellant owned real estate at Becks Knob Road *Page 12 
pursuant to the execution of a general warranty deed as discussed in the municipal court's forcible entry and detainer decision. The magistrate stated that "the motive of the Defendant-Husband was to hide ownership, and commit fraud upon the court."
 {¶ 46} The magistrate also found that pursuant to the terms of the lease, appellant was obligated to pay one thousand and seven hundred and fifty ($1,750.00) dollars a month in rent which equaled the first and second mortgage payments on the property. The magistrate stated that the intent of the parties was for the appellant to lease the premises from the Slades in an amount equal to the monthly mortgage payments due on the property, and then at some future time purchase the property in the amount equal to the balance owed on the first and second mortgage. The magistrate further noted that due to the nature of the property arrangement with the Slades, appellant was not legally liable on either the first or second mortgage on the property. However, the magistrate found that by virtue of the fact that the Slades signed a general warranty deed granting the property to the appellant, for the purposes of the domestic relations proceeding, appellant became the property owner. Therefore the magistrate found that the value of the Becks Knob property included twenty thousand ($20,000.00) dollars worth of improvements and twenty five thousand and eight hundred ($25,800.00) dollars which was the agreed purchase price pursuant to the lease agreement. For a total actual value of forty five thousand and eight hundred ($45,800.00) dollars.
 {¶ 47} In reviewing the parties incomes the magistrate found appellant's testimony to be less than credible. The magistrate stated that, "the Defendant-Husband claims that he makes between $13,000.00 and $25,000.00 a year. However, the parties *Page 13 
live a lifestyle that reflects significantly more income for the Defendant-Husband. * * * On Exhibit 17, the defendant's income was listed as $8,300.00 per month which would be a yearly income of $99,000.00 * * * He testified that he has no ledger, no office records nor calendar that would assist in determining his income."
 {¶ 48} The magistrate further held that the parties remaining marital asset was the balance of appellee's IRAs in the amount of thirty seven thousand, eight hundred and sixty one ($37,861.00) dollars and One thousand four hundred and sixty ($1,460.00) dollars. The magistrate awarded the IRAs to appellee to offset appellant's interest in the Beck's Knob real estate. The magistrate also stated that the initial withdrawal of sixty-five thousand ($65,000.00) dollars from the IRA by the appellee did not amount to financial misconduct because the finances were properly used and accounted for by appellee as being distributed to pay repairs, monthly bills, living expenses and a necessary four year car lease.
 {¶ 49} Finally, the magistrate ordered appellant to pay ten thousand ($10,000.00) dollars in attorney's fees. In support, the magistrate stated that the conduct of appellant was "deplorable." The magistrate noted that the court had to continually reprimand appellant for his actions in the courtroom. Furthermore, the magistrate stated that appellant blatantly misrepresented his unavailability for trial thereby requiring rescheduling. Further, the magistrate stated that appellant misrepresented his ownership interest in property and his actual income. The magistrate also stated that appellant's actions and demands were unreasonable. The magistrate found that the cumulative effect of appellant's behavior was to greatly increase appellee's legal fees. *Page 14 
 {¶ 50} On May 25, 2006, Keanon and Bonita Slade filed a quiet title action against appellant in the Fairfield County Court of Common Pleas, Case Number 2006CV00602.
 {¶ 51} On June 8, 2006, appellant filed a timely objection to the magistrate's divorce decision. Specifically, the appellant objected to the magistrate's decision in pertinent part as follows: (1) as it related to the liquidation of seventeen thousand ($17,000.00) dollars in stock options; (2) the finding that the duration of the marriage was from the date of the marriage to the final decree; (3) the disbursement of the Cardinal wrongful termination lawsuit settlement; (4) the decision finding appellant to be the title owner of the Becks Knob property; and, (5) the decision awarding appellee the retirement accounts with First Investors and Amerisource. The appellant further argued that the magistrate's decision did not provide for an equitable distribution of assets.
 {¶ 52} On August 28, 2006, the Fairfield County Court of Common Pleas issued a default judgment in favor of the Slades and against appellant. In the judgment entry the trial court found the Slades to be the rightful owners of the Becks Knob property and further found that the general warranty deed to appellant was void and invalid. The court further ordered appellant to pay twenty-two thousand seven hundred and fifty ($22,750.00) dollars in past due rent, eight thousand six hundred and fifty ($8,650.00) dollars in late fees, two thousand five hundred and twenty nine ($2,529.15) dollars and fifteen cents in bank penalties, four hundred and fifty ($450.00) dollars in costs for cleaning, trash removal etc, two thousand and eighty ($2,080.00) dollars for reasonable attorney's fees, interest and court costs. Finally, the court ordered appellant to vacate the Becks Knob property. *Page 15 
 {¶ 53} Appellant failed to file any motion in the divorce proceeding to amend his objection or to modify the magistrate's decision as it related to his interest in the Becks Knob property based on the August 28, 2006, judgment of the Fairfield County Court of Common Pleas.
 {¶ 54} On December 11, 2006, by judgment entry, the trial court overruled appellant's objections and affirmed the magistrate's divorce decision. The trial court found in pertinent part as follows: (1) that the liquidation of the stock option occurred in January of 2003, which pre-dates the filing of the divorce by one and one-half years and pre-dates the joint bankruptcy filed in June of 2003 and the discharge in September of 2003, and therefore was not an issue to be decided; (2) that the magistrate failed to delineate a specific duration of marriage and therefore, by presumption, the duration of the marriage is from the date of the marriage through the final hearing, and that the retirement funds remained intact and therefore any different determination of the marriage had no application; (3) that with regards to the Cardinal Health Inc. Settlement for lost wages, that the appellee was entitled to her wages earned after the parties separated; (4) that the parties' automobiles had no equity since the appellant testified that his car had no value and the wife had a lease and no right to any ownership interest; (5) that the magistrate correctly decided that the evidence established that the appellant had both title and interest in the Becks Knob property including any liability arising therefrom; (6) finally, that the magistrate correctly awarded retirement accounts to appellee as an offset to the appellant's interest in the Becks Knob property. The court further ordered appellee to prepare a Judgment Entry Decree of Divorce consistent with the magistrate's findings of facts and conclusions of law within thirty (30) days. *Page 16 
 {¶ 55} On December 26, 2006, in the divorce action, appellant filed a motion for new trial and/or for relief from judgment pursuant to Civ.R. 60(B). In the motion for new trial appellant moved the court to reconsider the property distribution in light of the August 28, 2006, decision of the Fairfield County Court of Common Pleas finding his interest in the Becks Knob property to be void and invalid.
 {¶ 56} On February 7, 2007, the trial court summarily denied appellant's motion for new trial and/or relief from judgment, and memorialized the December 11, 2006, decision by judgment entry with the Final Decree of Divorce submitted by appellee. The final decree stated that the judgment was effective on December 11, 2006. It is from this judgment that appellant seeks to appeal setting forth the following assignments of error:
 {¶ 57} "I. THE TRIAL COURT ERRED IN FINDING THAT THE DURATION OF AND TERMINATION DATE OF THE MARRIAGE WAS THE DATE OF THE FILING OF THE FINAL DECREE OF DIVORCE AND NOT THE DE FACTO DATE OF THE PARTIES FILING FOR DIVORCE ON OCTOBER 15, 2004 OR THE DATE DEFENDANT APPELLANT FILED HIS ANSWER AND COUNTERCLAIM ON DECEMBER 16, 2004 AS IT LED TO AN INEQUITABLE PROPERTY MARITAL DIVISION TO THE PREJUDICE OF THE APPELLANT.
 {¶ 58} "II. THE TRIAL COURT AND THE MAGISTRATE COMMITTED ERROR AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN NOT FINDING PLAINTIFF APPELLEE HAD COMMITTED FINANCIAL MISCONDUCT ON SEPTEMBER 18, 2004 BY WITHDRAWING $65,000 FROM THE PARTIES RETIREMENT FUND THAT PLAINTIFF UNILATERALLY ROLLED OVER FROM A *Page 17 
401(K) PLAN TO AN IRA IN HER NAME AND PLAINTIFF FURTHER DISSIPATED THE PARTIES MARITAL ASSETS BY CASHING IN $17,500 STOCK AND SPENDING THE SALE PROCEEDS OF MARITAL STOCK FOR HER SOLE BENEFIT.
 {¶ 59} "III. APPELLANT STATES THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT BY ORDERING AN AWARD OF $10,000 BE PAID TO APPELLEE WITHIN SIXTY DAYS OF THE DATE OF THE FINAL DECREE OF DIVORCE WHICH WAS OVER NINETY FIVE [PER]CENT OF APPELLEES ATTORNEY FEES.
 {¶ 60} "IV. THE COURT COMMITTED ERROR AND ABUSED ITS DISCRETION IN FINDING THAT THE VALUE OF THE REAL ESTATE WAS THE $20,000 COST OF IMPROVEMENTS PLUS THE $25,800 PURCHASE PRICE AND DID NOT TAKE INTO CONSIDERATION APPELLANT HAD ONLY A LEASE WITH AN EXPIRED OPTION TO PURCHASE WITH CONDITIONS PRECEDENT AND USED THE VALUE TO OFFSET A RETIREMENT AWARD.
 {¶ 61} "V. THE TRIAL COURT COMMITTED ERROR AS A MATTER OF LAW BY NOT MAKING THE DISTRIBUTION OF PROPERTY EQUAL OR EQUITABLE AND NOT MAKING WRITTEN FINDINGS OF FACT THAT SUPPORT THE DETERMINATION THAT THE MARITAL PROPERTY HAD BEEN EQUITABLY DIVIDED PER OHIO REVISED CODE SECTION3105.171(C)(A) and 3105.171(G) INCLUDING THE NATURE OF THE CARDINAL SETTLEMENT PROCEEDINGS.
 {¶ 62} "VI. THE TRIAL COURT ABUSED ITS DISCRETION AND ACTED ARBITRARILY PER RULE BY OVERRULING DEFENDANT APPELLANT'S MOTION FOR NEW TRIAL PER OHIO CIVIL RULE OF PROCEDURE 59(A) AND IN THE *Page 18 
ALTERNATIVE RELIEF FROM JUDGMENT PER OHIO CIVIL RULE 60(B)(2), (4), AND (5)."
 I {¶ 63} Appellant argues in his first assignment of error that the domestic relations court abused its discretion by presuming that the date of the final divorce hearing acted as the termination date of the marriage. Appellant claims that the trial court's failure to use a de facto date of termination resulted in an inequitable distribution of marital assets. Essentially, appellant argues that the trial court should have used either the date of filing the initial divorce complaint or the date of the filing of the counterclaim for divorce as the termination date. We disagree.
 {¶ 64} R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is usually the date of termination of the marriage. Thus, R.C.3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, for purposes of the division of marital property, is the date of the final divorce hearing. Bowen v. Bowen
(1999), 132 Ohio App.3d 616, 630, 725 N.E.2d 1165. Therefore, it is presumed the date of the final divorce hearing is the appropriate termination date of the marriage. Glick v. Glick (1999),133 Ohio App.3d 821, 828, 729 N.E.2d 1244.
 {¶ 65} However, the statute also permits a trial court to select a different date of termination, if it considers the date of the final divorce hearing to be "inequitable." Bowen v. Bowen, Supra. In Ohio, courts have recognized that equity may require valuation of marital assets on the date of a de facto termination of marriage. Cherry vCherry (1981), 66 Ohio St. 2d 348, 421 N.E. 2d 1293; Berish vBerish (1982), *Page 19 69 Ohio St. 2d 318, 432 N.E.2d 183. For example, the basis for a de facto termination date was established in Gullia v. Gullia, where one party left the marital home, the parties maintained separate bank accounts and business activities, the parties were separated for six years, and a substantial amount of assets were accumulated during the separation. SeeGullia v. Gullia (1994), 93 Ohio App. 3d 653, 639 N.E.2d 822.
 {¶ 66} However, separation does not necessarily terminate a marriagede jure. Langer v. Langer (1997), 123 Ohio App.3d 348, 704 N.E.2d 275. Generally the "duration of the marriage" lasts until the final hearing on the claim for divorce, in most instances. R.C. 3105.171(A)(2)(a).Lee v. Lee, Montgomery App. No. 17548, (decided May 21, 1999), unreported. As such, courts should be reluctant to use a de facto termination of marriage date unless the evidence clearly and bilaterally shows that it is appropriate based on the totality of the circumstances.Day v. Day (1988), 40 Ohio App.3d 155, 158, 532 N.E.2d 201;Stafinsky v. Stafinsky (1996), 116 Ohio App. 3d 781, 689 N.E.2d 112;Schnieder v. Schnieder (1996), 110 Ohio App. 3d 487, 674 N.E. 2d 796.
 {¶ 67} Generally, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an abuse of discretion. Berish v. Berish,supra. "The abuse of discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case." Jefferies v. Stanzak (1999), 135 Ohio App.3d 176, 179,733 N.E.2d 305 citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. Therefore, in order to find an abuse of discretion there must be a determination that the trial court's judgment is *Page 20 
"unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 68} Appellant argues that the date of the final decree is inequitable because it improperly included his interest in the Becks Knob property. Specifically, appellant argues that when he entered the lease agreement the parties were each responsible for their individual debts and liabilities.
 {¶ 69} Although the date of the filing of the divorce complaint and/or the counterclaim for divorce were potential dates for the end of the marriage, upon a review of the record the evidence does not demonstrate that the trial court's decision was unreasonable, arbitrary or unconscionable. No special situation existed which would require the use of an alternate valuation date. The trial court was mindful that from the date the divorce complaint was filed until the final hearing date, the parties had ongoing joint interests. Those joint interests included a need for medical coverage by appellant through appellee's benefits plan and a mutual interest in maintaining the marital residence until the foreclosure sale in March of 2005.
 {¶ 70} Finally, we note that appellant executed the general warranty deed for the Becks Knob property on December 26, 2004, only eight (8) days after his counterclaim for divorce was filed. It appears that appellant unilaterally decided the marriage should be deemed over as of the date of his counterclaim. During the pendency of a divorce case a trial court generally tries to freeze the movement of assets so the court can more easily discern the marital property and its value. The trial court did not abuse its discretion by failing to use the date unilaterally chosen by the appellant as the termination date of the marriage. *Page 21 
 {¶ 71} Therefore, we find that appellant has failed to overcome the presumption in favor of the date of the final hearing as the appropriate termination date of the marriage. Accordingly we find no abuse of discretion in the trial court's application of this date and hereby overrule appellant's first assignment of error.
 II {¶ 72} In his second assignment of error appellant argues that appellee engaged in financial misconduct by liquidating the Cardinal Health stock options, making a withdrawal from the First Investments IRA account and using the proceeds of both for her sole benefit.
 {¶ 73} R.C. 3105.171(E)(3) provides that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The burden of proving financial misconduct is on the complaining spouse. Mantle v. Sterry, Franklin App. No. 02AP-286, 2003-Ohio-6058. The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. Id., citing Babka v. Babka (1992), 83 Ohio App.3d 428,615 N.E.2d 247.
 {¶ 74} At trial, appellee testified that in January of 2002, she was forced to open a separate checking account after their joint account was frozen for appellant's nonpayment of child support for a child from a prior marriage. Appellee also testified that by agreement in 2002 she liquidated seven thousand ($7,000.00) dollars of Cardinal stock *Page 22 
to use toward joint expenses and a Cadillac lease agreement. (Volume one of Transcript of proceedings at pages 72-74, hereinafter TI.)
 {¶ 75} In December of 2002, appellant stopped contributing financially to any joint marital debt, including the mortgage on the home. As a result, appellee who, according to the bankruptcy petition, was earning a net monthly salary of two thousand and five hundred ($2,500.00) dollars was forced to liquidate seventeen thousand ($17,000.00) dollars of additional Cardinal Health stock and use the money for monthly living expenses. TI.74-75.
 {¶ 76} Appellee also testified that she was unemployed from October of 2003 until September of 2004. She stated that during that time she continued to use some of the liquidated stock proceeds for expenses. TI.98-99 In January of 2004 Appellee stated that she began receiving unemployment compensation and received approximately twelve thousand dollars over a six month period. (TI.93) She stated that during her unemployment, she received little financial assistance from appellant. She testified that in February of 2004, she paid six thousand and five hundred ($6,500.00) dollars as a retainer fee in the wrongful termination lawsuit against Cardinal Health. (TI.87) She further testified that in March of 2004 she was unable to meet her monthly expenses, moved back into the marital residence and paid all the outstanding debts, except the mortgage payments, which had accumulated on the property during the year of vacancy. She testified that the outstanding debts included, but were not limited to, the utilities, home owners association dues and home repairs. (TI. 54-55 and 83-84).
 {¶ 77} In March of 2004, she testified that she received approximately fifty-five thousand ($55,000.00) dollars from the IRA withdrawal. The evidence showed that in *Page 23 
September of 2004, she began employment with Amerisource making a gross salary of approximately seventeen hundred ($1,700.00) dollars every two weeks. From September of 2004 until March of 2005, appellee testified that, although she had a salary from Amerisource, it was necessary for her to use the IRA withdrawal for living expenses, attorney's fees in the amount of seven thousand and five hundred ($7,500) dollars and a car lease. TI.84-85 and 91. She further stated that the balance of approximately eleven thousand ($11,000.00) dollars for the tax liability from the IRA withdrawal remained unsatisfied and was accumulating delinquency fees.
 {¶ 78} In regard to the car lease, appellee testified that during the marriage both parties leased Cadillac's through Crestville Cadillac. TI. 49. Appellee stated that after the bankruptcy she had "zero credit", was unable to finance a car purchase, and needed to get a new vehicle before her current lease expired. She stated that due to their prior dealings, she knew the "folks" at Crestville Cadillac and felt comfortable asking them for help. As a result she executed a four year pre-paid lease agreement in the amount of twenty-nine thousand ($29,000.00) dollars for a Cadillac STS. (TI.85-86).
 {¶ 79} In the decision filed on May 26, 2006, the magistrate determined that appellee's liquidation of the stock option transpired before the divorce and therefore the liquidation of the stock option was not an issue to be decided. On December 11, 2006, the court found the magistrate's decision, "to be consistent with the law and evidence." The court further held that although appellant raised issues regarding how the IRA funds were expended the magistrate properly found that the money was expended for "debt and support during a period of time in which the defendant-husband (appellant) *Page 24 
was not making financial contributions." The court also found that appellant "failed to present any evidence of his allegations of financial misconduct."
 {¶ 80} Upon review, we are mindful that the evaluation of evidence and assessment of the witness' credibility are primarily for the trier of fact. Ostendorf-Morris Co. v. Slyman (1982), 6 Ohio App.3d 46, 47,6 OBR 156, 157-158, 452 N.E.2d 1343, 1345. In the decision, the magistrate also emphasized that some determinations regarding the representation of the parties' relative financial status and spending came down to assessing the credibility of witness testimony. It is apparent from the comments that the magistrate found appellant's financial representations to be less than credible. Additionally, the trial court repeatedly requested appellant to provide the court with evidence which would establish lavish self-indulgent spending by appellee. With the possible exception of the Cadillac lease, he failed to present such evidence.
 {¶ 81} In regard to the Cadillac lease, we find that the failure of the trial court to determine that said expenditure was financial misconduct is against the manifest weight of the evidence and an abuse of discretion. While it appears that it was the past habit of both parties to enter into such lease agreements for personal and professional transportation purposes, the timing and circumstances of that transaction lead this court to the conclusion regarding financial misconduct. The parties received a bankruptcy discharge in September of 2003, appellee was out of work from October of 2003 until September of 2004, and appellee filed for divorce on October 15, 2004. Appellee entered into the $29,000.00 Cadillac lease nine days before she filed for divorce. If appellee needed to have reliable, suitable transportation, then under the circumstances, a more conservative expenditure should have been made. Therefore, to the extent that *Page 25 
the expenditure for the Cadillac lease exceeded the expenditure needed by the appellee to obtain reliable, suitable transportation, the trial court should have found such excess to be financial misconduct. Certainly a shorter lease for a less expensive vehicle or a cash purchase of a used vehicle were among other options available to appellee.
 {¶ 82} For these reasons, we find that appellant failed to establish that the liquidated Cardinal Health stock option and a portion of the IRA withdrawal were used in a manner which would establish financial misconduct by appellee. But, we find that appellant prevails on his assignment of error as to the portion of the IRA withdrawal which represents excessive expenditure by appellee for a vehicle. Accordingly, appellant's second assignment of error is hereby overruled in part and sustained in part.
 III {¶ 83} Appellant argues in his third assignment of error, that the trial court abused its discretion in awarding ten thousand ($10,000.00) dollars of attorney fees to appellee. Specifically, appellant argues that the trial court's award is not based on specific facts, such as whether appellee could bear her own costs in order to adequately protect her rights, and/or whether appellant had the financial ability to pay the award.
 {¶ 84} R.C. 3105.73(A) governs the award of attorney fees and litigation expenses in domestic relations cases and provides: "In an action for divorce * * * or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of parties, and any other relevant factors the court deems appropriate." *Page 26 
 {¶ 85} R.C. 3105.73(A) does not specifically require the trial court to consider the parties' abilities to pay attorney fees. Therefore, the trial court does not abuse its discretion every time it fails to consider the parties' abilities to pay. The statute allows the trial court to look at any relevant factor.
 {¶ 86} The awarding of attorney fees is within the sound discretion of the trial court. Swanson v. Swanson (1976), 48 Ohio App.2d 85,355 N.E.2d 894. The court may decide on a case by case basis whether an award of attorney's fees is equitable. Ockunzzi v. Ockunzzi, Cuyahoga App. No. 86785, 2006-Ohio-5741, at paragraph 70. When the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion. Id.; see, also, Richardson v. Richardson (Dec. 28, 1988), Medina App. No. 1726, unreported, at 5. Upon appeal, the question for inquiry is whether the trial court abused its discretion. Rand v.Rand (1985), 18 Ohio St.3d 366, 369, 481 N.E.2d 613.
 {¶ 87} In this case, as an exhibit, appellee's counsel submitted time sheets and a fee statement setting forth the attorney's fees, costs and expenses incurred during the course of the litigation. Additionally, the trial court reviewed the conduct of appellant and the manner in which the conduct affected the course of the litigation as it related to the expenses. Specifically, the trial found that appellant deliberately misrepresented his income and his interests. This misrepresentation led to additional motions and hearings. Furthermore, the trial court stated that the amount of the fees incurred had been significantly affected by the appellant's conduct, which included appellant's failure to conduct himself professionally in the courtroom. *Page 27 
 {¶ 88} As previously noted, R.C. 3105.73(A) expressly lists the "the conduct of the parties" as one of the factors the court may consider in determining whether an award of attorney fees is equitable. The record does not show, that under the circumstances of the case, the trial court's decision was "unreasonable, arbitrary or unconscionable". We, therefore, find that the trial court did not abuse its discretion in awarding attorney's fees. Accordingly, appellant's third assignment of error is hereby overruled.
 IV {¶ 89} In the fourth assignment of error, appellant argues that the trial court abused its discretion in arbitrarily placing a value on the Becks Knob property for the purposes of dividing marital assets. Appellant also argues that the magistrate incorrectly found that the purchase price of the property was twenty five thousand and eight-hundred ($25,800.00) dollars.
 {¶ 90} Prior to making a distribution of property, the trial court must first place a value on the individual marital assets. In performing this function, the court has broad discretion to develop some measure of value. Berish v. Berish (1982), 69 Ohio St.2d 318, 432 N.E.2d 183. A flat rule to determine the value of assets cannot be established as equity depends on the totality of the circumstances. Briganti v.Briganti (1984), 9 Ohio St.3d 220, 222, 459 N.E.2d 896. When determining the value of marital assets, a trial court is not confined to the use of a particular valuation method but can make its own determination as to valuation based on the evidence presented. James v. James (1995),101 Ohio App.3d 668, 681, 656 N.E.2d 399. A trial court's valuation of marital property will not be reversed absent an abuse of discretion.Id. *Page 28 
 {¶ 91} In this case, prior to the divorce hearing, appellant initially failed to disclose his ownership interest in the Becks Knob property. Evidence of appellant's ownership interest was presented to the trial court for consideration pursuant to a post-trial motion to consider further evidence and request for a hearing. At the hearing appellant testified that he had invested twenty thousand ($20,000.00) dollars in property improvements. The lease agreement stated that the purchase value of the property was two hundred and fifty-eight thousand ($258,000.00) dollars. Furthermore appellant admitted that the general warranty deed did not make him liable for the property's first and second mortgages.
 {¶ 92} A review of the record establishes that appellant was attempting to ride "two horses." In other words, for the purposes of the divorce action and distribution of marital property, appellant testified that he had no equitable interest in the Becks Knob property pursuant to the general warranty deed and could only obtain an equitable interest in the event that the Slades were willing to re-negotiate the purchase price to his financial liking. However, for the purposes of the forcible entry and detainer action, appellant successfully argued that he had a general warranty deed which gave him an ownership interest in the property without any financial obligations for the first and second mortgages.
 {¶ 93} As a result, appellant argued that his ownership interest in the Becks Knob property had zero liability and zero equity until proven otherwise. The magistrate found that appellant had an ownership interest in the property and, being required to value an ownership interest in property and unable to predict the result of future litigation as to fraud and the validity of the general warranty deed, the magistrate valued the property *Page 29 
in accordance with appellant's testimony regarding twenty thousand ($20,000.00) worth of improvements and the purchase price set forth in the purchase option. The magistrate appeared to have made a clerical error in finding the agreed purchase price to be twenty five thousand and eight hundred ($25,800.00) dollars when in fact the language of the lease states the price as being two hundred and fifty-eight ($258,000.00) thousand dollars. The trial court affirmed the magistrate's findings stating that appellant obtained title in December of 2004 and retained title throughout the course of the case. The court further held that the magistrate's decision was consistent with the law and evidence.
 {¶ 94} Upon review we find that the trial court used the evidence presented to equitably determine a value for the Becks Knob property. Accordingly, the manner in which the value was determined was not an abuse of discretion. It does appear that there was a clerical error in quoting the actual purchase price pursuant to the lease agreement. However, this error only served to benefit appellant.
 {¶ 95} For these reasons we hereby overrule appellant's fourth assignment of error.
 V {¶ 96} In appellant's fifth assignment of error, he sets forth several arguments including that 1) the trial court erred by failing to compensate him for appellee's financial misconduct; 2) the trial court failed to equitably determine the duration of the marriage; and, 3) the trial court erred in awarding appellee the value of the Cardinal Health Settlement, the First Investor's IRA and the Amerisource Bergen retirement account. *Page 30 
 {¶ 97} We first note that the arguments regarding financial misconduct and the duration of the marriage have been previously addressed in prior assignments of error. In the prior review, this Court determined that the trial court's findings were not against the manifest weight of the evidence and or an abuse of discretion, except to the extent the $29,000.00 for the Cadillac lease exceeded the amount needed to provide the appellee with reliable, suitable transportation. Accordingly, for the purposes of this assignment of error, we find that the trial court erred in not compensating the appellant for one-half of the marital funds which were spent by appellee on the four year pre-paid Cadillac lease and which exceeded the amount needed by the appellee to provide her with reliable, suitable transportation.
 {¶ 98} The focus for the remainder of this assignment of error shall be on the distribution of the Cardinal Health Settlement and the retirement accounts.
 {¶ 99} Appellant argues that the trial court erred in awarding the value of the Cardinal Health Settlement, the First Investor's IRA balance and the Amerisource Bergen retirement account to appellee. Specifically, appellant argues that the trial court erred in determining that the Cardinal Health Settlement was appellee's sole separate property and in inequitably awarding appellee the balance of the First Investor's IRA and the Amerisource Bergen retirement accounts.
 {¶ 100} "A `trial court's characterization of property * * * is a question of fact, thus a reviewing court must apply a manifest weight of the evidence standard of review to the trial court's characterization.'"O'Grady v. O'Grady, 11th Dist. No. 2003-T-0001, 2004-Ohio-3504, at paragraph 49, citing Humphrey v. Humphrey, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, at paragraph 16. In deciding whether a trial court's characterization of *Page 31 
property is against the manifest weight of the evidence, we "must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trial court clearly `lost its way and created such a manifest injustice that the [judgment] must be reversed and a new trial ordered.'" O'Grady at paragraph 49, citing Boggins v. Boggins, 9th Dist. No. 3246-M, 2002-Ohio-3183, at paragraph 7.
 {¶ 101} In dividing marital property, a trial court possesses broad discretion to effect an equitable and fair property division.Worthington v. Worthington (1986), 21 Ohio St.3d 73, 21 OBR 371,488 N.E.2d 150; Cherry v. Cherry (1981), 66 Ohio St.2d 348, 20 O.O.3d 318,421 N.E.2d 1293. Generally, the trial court is vested with broad discretion in determining the appropriate scope of property awards.Berish v. Berish (1982), 69 Ohio St.2d 318, 432 N.E.2d 183. Although its discretion is not unlimited, it has authority to do what is equitable.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. A reviewing court should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion. Section 3(B), Article IV of the Ohio Constitution: App.R. 12; Briganti v. Briganti (1984), 9 Ohio St.3d 220,459 N.E.2d 896; Kaechele v. Kaechele (1988), 35 Ohio St.3d 93,518 N.E.2d 1197. "The mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion." Id. at paragraph 2 of the syllabus.
 {¶ 102} R.C. 3105.171(A)(3)(a)(i) defines "marital property" as "all real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or *Page 32 
both of the spouses during the marriage [.]" Property that is "acquired during marriage is presumed to be marital unless it can be shown to be separate." Sedivy v. Sedivy, 11th Dist. Nos. 2006-G-2687 and 2006-G-2702,2007-Ohio-2313, at paragraph 21, citing McLeod v. McLeod, 11th Dist. No. 2000-L-197, 2002-Ohio-3710, at paragraph 16; Frederick v.Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458, at 6. A loss of earning award is marital property.Loeffler v. Loeffler (2006), 167 Ohio App. 3d 737, 2006-Ohio-3060,857 N.E.2d 150.
 {¶ 103} Marital property does not include separate property. R.C.3105.171(A)(3)(b). "Separate property" is defined in R.C. 3105.171
(A)(6)(a)(ii) as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."
 {¶ 104} R.C. 3105.171(F) provides factors to determine an equitable division of property. The factors are: (1) the duration of the marriage; (2) the assets and liabilities of the spouses; (3) the desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) the liquidity of the property to be distributed; (5) the economic desirability of retaining intact an asset or an interest in an asset; (6) the tax consequences of the property division upon the respective awards to be made to each spouse; (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; (9) any other factor that the court expressly finds to be relevant and equitable. *Page 33 
 {¶ 105} With regard to the Cardinal Health Settlement the magistrate found that it included compensation for, inter alia, attorney's fees and lost wages, and it was the sole separate property of appellee. We find this determination as it relates to the portion of the settlement which was compensation for lost wages and for any expenses (i.e. attorney's fees) paid with marital funds to be error. To the extent which net settlement proceeds represent compensation for appellee's lost wages, these proceeds would be marital property because those wages would have been "marital earnings" within the meaning of R.C. 3105.171(A)(6)(a). See Modon v. Modon (1996), 115 Ohio App. 3d 810, 686 N.E.2d 355.
 {¶ 106} Therefore, the finding by the trial court that the entire Cardinal Health settlement is the separate property of the appellee is an error of law. But, we find the error to be harmless regarding the portion of the settlement which was compensation for lost wages and which was compensation for a portion of the attorney's fees. The trial court, in ruling on appellant's objection, found, "As it relates to [appellant's} claim for loss [sic] wages as a marital issue, the magistrate correctly found that the parties separated in January, 2003, received a bankruptcy in September, 2003, and had very minimal financial contact between the two of them subsequent to that time. Therefore, the magistrate correctly found that [appellee] was entitled to her wages earned during this period of time free and clear of any claim of the [appellant]."
 {¶ 107} We thus conclude that, even if the portion of the Cardinal Health Settlement which compensates appellee for lost wages is designated as marital *Page 34 
property, it was equitable to award it to the appellee because appellant kept his income during that same time period.[2]
 {¶ 108} We do not find the error to be harmless as to the extent the Cardinal Health Settlement compensated the appellee for attorney's fees paid by appellee from the $65,000.00 IRA withdrawal. Appellee testified that she paid $5,000.00 toward attorney's fees for the case against Cardinal Health from the $65,000.00 withdrawn from marital funds in the IRA. T.86 lines 14-18.
 {¶ 109} Therefore, we find that the trial court erred in not dividing equally between the parties as marital property any amounts in the Cardinal Health Settlement which represented compensation for attorney's fees paid by the appellee from the $65,000.00 IRA withdrawal.[3]
 {¶ 110} With regard to the balance of the First Investor's IRA and the Amerisource Bergen retirement accounts, it appears that the trial court offset the value of these accounts with the value of the Becks Knob property. In an effort to make an equitable distribution, the magistrate awarded to the appellant the Becks Knob property valued at forty five thousand and eight hundred ($45,800.00) dollars and awarded to the appellee the First Investors IRA with an approximate value of thirty seven thousand ($37,000.00) dollars and the Amerisource Bergen retirement account with an approximate value of one thousand four hundred and sixty ($1,460.00) dollars. Although this distribution does not appear to be equal it does appear to be equitable, and it favors the appellant. *Page 35 
 {¶ 111} For these reasons we find that the decision, granting all of the Cardinal Health Settlement to the appellee, to be in error. We further find that the trial court did not abuse its discretion in awarding the Amerisource retirement account and the First Investor's IRA to appellee in order to offset appellant's equity in the Becks Knob property. Accordingly, appellant's fifth assignment of error is overruled as to the retirement accounts, but is sustained in part as to the Cardinal Health settlement.
 VI {¶ 112} In the sixth assignment of error appellant argues that the trial court abused its discretion in denying his motion for new trial pursuant to Civ. R. 59(A), or in the alternative his motion for relief from judgment pursuant to Civ. R. 60(B)(2), (4), and (5).
 {¶ 113} Initially we note that, both a motion for new trial and motion to vacate judgment are within the trial court's discretion and must not be disturbed on appeal absent an abuse of discretion. See, State vSchiebel (1990), 55 Ohio St. 3d 71, 564 N.E.2d 54. An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than a mere error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140.
 {¶ 114} Appellant argues that he was entitled to a new trial based on newly discovered evidence. Initially we note that the magistrate's decision was issued on May 25, 2006. The judgment which appellant claims was newly discovered evidence was filed in the Fairfield County Court of Common Pleas on August 28, 2006. The final decree of divorce was granted on December 11, 2006, and was memorialized by judgment entry on February 7, 2007. Appellant filed his motion for new trial on *Page 36 
December 26, 2006. From May 25, 2006 until December 11, 2006, the magistrate's decision was an interlocutory order.[4]
 {¶ 115} A magistrate's decision is an interlocutory order that is "tentative, informal or incomplete" and is subject to reconsideration upon the trial court's motion or that of a party. Cohen v. BeneficialIndustries Loan Corp. (1949), 337 U.S. 541, 546, 69 S.Ct. 1221,93 L.Ed. 1528. A magistrate's decision remains interlocutory until the court reviews that decision, adopts or modifies the decision and enters judgment that determines the claims for relief in the action or determines that there is no just reason for delay. Yartik v. CoachBuilders Ltd., Inc., Hamilton App. No, C-060601, 2007-Ohio-5126.
 {¶ 116} A motion for new trial pursuant to Civ.R.59(A) and a motion for relief from judgment pursuant to Civ.R.60(B)(2) permit a court to relieve a party from final judgment on the grounds of newly discovered evidence. Newly discovered evidence refers to facts in existence at the time of trial, of which the parties were excusably ignorant.
 {¶ 117} Pursuant to Civ.R. 59, a trial court may grant a new trial based upon newly discovered evidence material to the action, which with reasonable diligence could not have been discovered and produced at trial. To establish that newly discovered evidence warrants a new trial, the movant must show that 1) the new evidence will probably change the result, 2) the evidence was discovered since the trial, 3) the evidence could not, in the exercise of due diligence, have been discovered before the *Page 37 
trial; 4) the evidence is material to the issue; 5) the evidence is not merely cumulative, and, 6) the evidence does not merely impeach or contradict the former evidence. Sheen v. Kubiac (1936), 131 Ohio St. 52, paragraph three of syllabus.
 {¶ 118} Similarly, Civ. R. 60(B) states in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); * * * (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. See, GTE Automatic Electric Company v. ARCIndustries (1976), 47 Ohio St.2d 146, 351 N.E.2d 113.
 {¶ 119} Civ.R.60(B)(4) provides for relief from judgment when the continued application of the judgment would no longer be equitable. It was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control; in other words, the rule was not meant to offer a party a means to negate a prior finding that the party could have foreseen or reasonably prevented. Richardson v. Richardson, Franklin App. No. 07AP-287, 2007-Ohio-287; Barnes v, Barnes, Stark App. No. 2003CA00383, 2005-Ohio-544; Cuyahoga Support Enforcement Agency v. Guthrie (1999),84 Ohio St. 3d 437, 705 N.E.2d 318. "Litigants armed with the knowledge that Civ.R.60 (B)(4) would relieve them of the consequences of their voluntary, deliberate choices, would be encouraged to litigate carelessly. *Page 38 
 Atchison v. Atchison, Scioto App. No. 00CA2727, (decided June 29, 2001), citing Cuyahoga Support Enforcement Agency v, Guthrie, Supra.
 {¶ 120} Civ. R. 60(B)(5) permits the trial court to vacate a judgment for any other reason justifying relief from judgment. However, the catchall provision of Civ.R. 60(B)(5) should only be used in extraordinary or unusual cases where substantial grounds exist to justify relief. Wiley v. Gibson (1997), 125 Ohio App. 3d 77,707 N.E.2d 1151, Adomeit v. Baltimore (1974), 39 Ohio Ap. 2d 07, 316 N.E.2d 469. Furthermore, it applies only where a more specific provision of Civ.R. 60(B) does not apply. Strack v. Pelton (1994), 70 Ohio St.3d 172.637 N.E. 2d 914.
 {¶ 121} In this case, evidence was presented that the value of the Becks Knob property was approximately two hundred and fifty eight thousand ($258,000.00) dollars. During the pendency of the action, appellant admitted that he had an ownership interest in the property but argued that his interest in the property was worthless. On May 25, 2006, the magistrate issued her decision finding appellant to be the titled owner of the Becks Knob property and finding appellant's interest in the Becks Knob property to be worth forty-five thousand and eight hundred ($45,800.00) dollars. The magistrate's decision was based on the Municipal Court's judgment refusing to evict appellant from the property for non-payment of rent because the appellant had shown the Municipal Court his deed to the Becks Knob property. On August 28, 2006, the Fairfield County Court of Common Pleas issued a decision finding appellant's ownership interest in the Becks Knob property to be void or voidable. Appellant does not argue that he was not timely served with the Fairfield County judgment. On December 11, 2006, the trial court entered a final judgment of divorce which approved and adopted the magistrate's *Page 39 
decision. On December 26, 2006, appellant filed his motion for new trial and/or to vacate judgment arguing that the Fairfield County judgment was newly discovered evidence which made prospective application of the divorce decree unfair.
 {¶ 122} Upon review we first find that the judgment entry voiding appellant's interest in the Becks Knob property is not newly discovered evidence. The judgment of the Fairfield County Court of Common Pleas occurred after the presentation of evidence but before final judgment was entered on December 11, 2006. Appellant became aware of the judgment on or about August 28, 2006, but failed to bring the judgment to the attention of the trial court while the magistrate's interlocutory order was pending. Appellant can not now argue that he was excusably ignorant of the evidence until after the final decision was rendered justifying relief pursuant to Civ.R. 59(A) and Civ. R. 60(B)(2).
 {¶ 123} Furthermore, the trial court did not abuse its discretion in denying appellant's Motion for Relief from Judgment pursuant to Civ.R. 60(B)(4). That rule provides relief when continued application of the judgment would no longer be equitable. Appellant's own actions of claiming an ownership interest in the property in Municipal Court in order to avoid eviction led the trial court in the case sub judice to find that appellant had an ownership interest in the property. Appellant's actions indicate that appellant knew or should have know that his ownership interest in the property was invalid even though he asserted it was valid in the Municipal Court. Appellant did not comply with the terms of the agreement with the Slades that would have allowed him to acquire ownership. Appellant told the Magistrate in the case sub judice that his interest in the property was worthless. Appellant did not file an answer in the Fairfield County *Page 40 
Court of Common Pleas case which was filed by the Slades to prove their ownership in the property. It appears that appellant sought equitable relief but did not come to the trial court with "clean hands." It was appellant's own actions of asserting an ownership interest, that he knew or should have known was invalid, in the Municipal Court that led to his problems. He was the architect of his own demise.
 {¶ 124} Finally, these circumstances are not of a nature to justify Civ.R. 60(5) relief. Appellant knew or could have reasonably foreseen that his questionable actions regarding the Becks Knob property would lead to harsh results. This is not a situation where appellant was unjustly affected by circumstances beyond his control. Rather it is the appellant's conduct which led to the resulting consequences. This is not an extraordinary circumstance contemplated by Civ.R. 60(B)(5) to justify relief.[5]
 {¶ 125} Accordingly, the trial court under the specific facts and circumstances of this case, did not abuse its discretion in overruling appellant's motion for new trial or, in the alternative, motion for relief from judgment. For these reasons, we hereby overrule appellant's sixth assignment of error. *Page 41 
 {¶ 126} Judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is hereby affirmed in part and reversed and remanded in part regarding a portion of the funds spent by appellee on the Cadillac lease and regarding the portion of the Cardinal Health Settlement representing compensation for $5,000.00 in attorney's fees paid by appellee from the $65,000.00 IRA withdrawal.
 Edwards, J. Hoffman, P.J. and Farmer, J. concur *Page 42 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division is affirmed in part and reversed and remanded in part. Costs assessed 90% to appellant and 10% to appellee.
[1] Appellee testified that she moved the assets because she was suing Cardinal Health and did not want to leave her financial assets in their care.
[2] We acknowledge that appellant did pay for some of appellee's expenses during that time, including car insurance of $80.00 a month, new tires at $1,700.00 and a contribution to COBRA.
[3] Appellant also wanted compensated from the attorney fee the portion of the Cardinal Health Settlement for the hours he worked on the Cardinal Health case as appellee's attorney. The trial court found that appellant "would have a remedy for collection of his attorney's fees independent of [the divorce] action." We do not find this portion of the trial court's decision to be in error.
[4] In this case the trial judge decided the matter on December 11, 2006 and ordered the parties to prepare a final decree of divorce. The final decree was prepared, executed and filed on February 7, 2007. The final decree clearly stated that the judgment was final on December 11, 2006. A judgment entry is final where "the trial judge clearly declared his intention to enter a final decision in the matter before him."Miller v. Miller (1976), 47 Ohio St. 2d 43, 44, 350 N.E.2d 675.
[5] We make no determination regarding whether our decision would be the same had the trial court valued the Becks Knob property at $285,000.00 instead of $48,500.00 (which consisted of $28,500.00 plus $20,000.00 actually spent by appellant from marital funds for repairs on said property.) *Page 1