[Cite as *Beringer v. Beringer*, 2014-Ohio-5232.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| JAMES BERINGER | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2013 CA 00236 |
| DENISE BERINGER | |
| Defendant-Appellant | O P I N I O N |



CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 2011 DR 01264

JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    November 24, 2014


APPEARANCES:

For Plaintiff-Appellee

DAVID E. BUTZ
KRUGLIAK, WILKINS, GRIFFITHS
& DOUGHERTY
4774 Munson Street, NW
Post Office Box 36963
Canton, Ohio 44735-6963

For Defendant-Appellant

LORRIE E. FUCHS
Post Office Box 35787
Canton, Ohio 44735

*Wise, J.*

{¶1}. Appellant Denise Beringer appeals from her divorce in the Stark County Court of Common Pleas, Domestic Relations Division. Appellee James Beringer is appellant's former spouse. The relevant facts leading to this appeal are as follows.

{¶2}. Appellant and appellee were married on May 31, 2007. One child was born of the marriage. Divorce proceedings between appellant and appellee were commenced in 2010 and 2011, but in both instances the complaints and counterclaims were dismissed.

{¶3}. On October 11, 2011, appellee filed a complaint for divorce. Appellant thereafter filed an answer and counterclaim. The trial court set temporary orders of child support at $1,800.00 per month and spousal support at $3,500.00 per month.

{¶4}. The case was originally set for trial on August 20, 2012. As further discussed *infra*, the trial was continued until December 2012, continued a second time until January 2013, and continued again until it was heard over the course of two days before a magistrate on March 25, 2013 and May 13, 2013.

{¶5}. On September 11, 2013, the magistrate issued his decision granting the parties a divorce. Among other things, the magistrate found that the de facto termination of marriage date was August 20, 2012, although appellant had argued that the termination date of marriage should be the date in which the matter came on for hearing, March 25, 2013. In addition, appellee was ordered to pay child support, as well as tuition to St. Michael's School (or the equivalent) for the parties' daughter. The magistrate also recommended that appellee pay appellant spousal support in twelve monthly installments of $11,477.57 starting September 1, 2013. Appellee was to

maintain health and life insurance for the child. The magistrate further awarded the marital residence on Thornwood Street to appellee, with appellee paying appellant $45,844.00 upon transfer of a quitclaim deed. The magistrate also made recommendations regarding marital property and separate property. Neither party was awarded attorney fees by the magistrate.

{¶6}. On September 20, 2013, appellant filed an objection to the magistrate's decision.

{¶7}. On October 30, 2013, the trial court conducted a hearing on appellant's objection.

{¶8}. Upon review, the trial court approved the magistrate's decision on November 5, 2013, with four exceptions. First, there was a clarification of certain items in the division of personal property, including a desk, chair, and filing cabinet. Second, the court altered the attorney fee decision, ordering appellee to pay an additional $8,000 as appellant's attorney fees, to be paid within 30 days. Thirdly, the trial court ordered that the pro rata portion of the 2012 profit sharing contribution, in the amount of $22,000, was marital property and would be divided equally. Finally, the court found the personal checking accounts to be marital property, and ordered those assets to be equalized.

{¶9}. Appellant filed a notice of appeal on December 3, 2013. The trial court issued a final decree of divorce on December 2, 2013. Appellant thereafter filed an amended notice of appeal. She herein raises the following five Assignments of Error:

{¶10}. "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THE DE FACTO TERMINATION DATE OF MARRIAGE TO BE

AUGUST 20, 2012, AND NOT THE DATE WHEN THE CASE WAS HEARD BEFORE THE COURT.

{¶11}. "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO INCLUDE IN MARITAL PROPERTY AMOUNTS APPELLEE HAD EXPENDED ON A (SIC) APPELLEE'S MARITAL DEBT TO A FORMER SPOUSE AND PAYMENTS FOR APPELLEE'S OTHER ADULT CHILDREN, THEREBY REDUCING THE MARITAL PROPERTY TO BE EQUITABLY DIVIDED WITH APPELLANT.

{¶12}. "III. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DETERMINATION OF AMOUNT AND DURATION OF SPOUSAL SUPPORT.

{¶13}. "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SIGNED OVER THE OBJECTIONS OF THE APPELLANT A FINAL DECREE WHICH CONTAINED A PROVISION WHICH WAS NOT ADDRESSED BY THE MAGISTRATE NOR APPELLEE ON OBJECTION.

{¶14}. "V. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE VALUE OF MIXES (SIC) ASSETS WHICH WERE PART OF THE MARITAL ESTATE."

I.

{¶15}. In her First Assignment of Error, appellant argues the trial court erred in establishing the term of the parties' marriage, particularly by using the first scheduled trial date as the de facto termination of marriage date. We disagree.

{¶16}. R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is usually the date of termination of the marriage. Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the

proper date for the termination of a marriage, for purposes of the division of marital property, is the date of the final divorce hearing. *Bowen v. Bowen* (1999), 132 Ohio App.3d 616, 630, 725 N.E.2d 1165. Therefore, it is presumed the date of the final divorce hearing is the appropriate termination date of the marriage. *Glick v. Glick* (1999), 133 Ohio App.3d 821, 828, 729 N.E.2d 1244. However, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an abuse of discretion. *See Berish v. Berish* (1982), 69 Ohio St.2d 318, 321, 432 N.E.2d 183. A trial court should review the totality of the circumstances in determining the appropriateness of a de facto termination date. *See Boggs v. Boggs*, 5th Dist. Delaware No. 07 CAF 02 0014, 2008-Ohio-1411, ¶ 66.

{¶17}. The record in the case sub judice reveals that the first trial date of August 20, 2012 was continued, upon the request of appellant, so that she could obtain new counsel. A new trial date was set for December 17, 2012. However, the matter was then continued from the December date to January 25, 2013, apparently because the magistrate was ill. However, on January 17, 2013, appellant's second counsel filed a motion to withdraw from representation. The trial court granted the withdrawal of counsel and continued the trial until March 25, 2013.

{¶18}. Appellant presently seeks to portray the marriage termination date issue as an instance of the trial court punishing her for changing counsel, which she maintains were based on fee disputes or conflicts of interest. *See* Appellant's Brief at 9. However, the record indicates that appellant and her first attorney "were not seeing eye to eye on things," (Tr., January 23, 2013, at 11) and her second attorney told the court that her client had lost confidence in her representation, although it appears some fee issues

may have been involved (*id.* at 3). Moreover, the magistrate patently considered the totality of the circumstances, over and above the continuance factor. The magistrate noted, for example, that appellee was forced to seek an order to obtain income tax information and an order to compel discovery on July 31, 2012, that appellant refused to provide the book she had written in spite of a stipulated order dated September 11, 2012, and that testimony indicated that the parties had no relations after June or July 2012. Magistrate's Decision at 3. Also, the parties lived separate and apart after the couple's last reconciliation attempt failed on June 6, 2012, and appellee agreed to purchase his own home on July 15, 2012, after living in hotels for a number of months. *Id.* Finally, the magistrate found the parties had ceased to function as a family unit prior to August 20, 2012, and that appellee had no intention of dismissing the divorce after August 2012. *Id.*

{¶19}. The magistrate also determined: "[t]his matter could have been prepared by counsel for three different trial dates and three different attorneys. The de facto marriage termination date assured counsel of a fixed date for determination of marital property and valuation thereof. It would be inequitable to allow WIFE to force HUSBAND to guess which date the court would select and provide property evaluations for each possible date." *See* Magistrate's Decision at 3.

{¶20}. Accordingly, upon review, we conclude that the trial court fully considered the term of marriage issue, and we find no abuse of discretion in the trial court's selection of August 20, 2012, as the de facto termination date of the marriage.

{¶21}. Appellant's First Assignment of Error is therefore overruled.

II.

{¶22}. In her Second Assignment of Error, appellant argues the trial court abused its discretion in dividing marital property by failing to account for certain payments made during the marriage by appellee to his ex-wife, pursuant to his prior divorce, and to his adult children. We disagree.

{¶23}. Historically, "[t]he concept of marital property is derived from the premise that marriage is a voluntary partnership of co-equal partners with a division of duties and labor that entitles each partner to a one-half interest in the assets accumulated from the fruits of the partnership activity while the marriage is functioning." *Tomlin v. Tomlin* (March 16, 1987), Montgomery App. No. 10094, citing *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 350 N.E.2d 413. An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. Thus, a trial court should be given wide latitude in dividing property between the parties. *See Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 432 N.E.2d 206.

{¶24}. Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA–5758, 1982 WL 2911. The trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. *See, e.g., Taralla v. Taralla,* Tuscarawas App. No. 2005 AP 02 0018, 2005–Ohio–6767, ¶ 31, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

{¶25}. R.C. 3105.171(E)(4) directs that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

### *Payments to Appellee's Ex-wife*

{¶26}. The record in the case sub judice indicates that as a result of appellee's prior divorce, appellee had issued a zero-interest note to his ex-wife in the amount of $350,000.00 as a settlement for appellee's retention of certain company stock. Appellee essentially had the option of paying back his ex-wife over the course of several years, interest free. *See* Tr. I at 58-59. However, appellant and appellee discussed this matter prior to their marriage, and appellant insisted that appellee deal with the remainder of this debt. Appellee liquidated $205,000.00 of his separate property, namely certificates of deposit, and applied the money to the note obligation. He then used $50,500.00 of marital assets early in the marriage to satisfy the remainder. *See* Tr. I at 59. Appellant presently argues that the latter sum should have been accounted for in the distribution of property by crediting her with one-half of the amount paid during the marriage.

{¶27}. Appellant directs us to our decision in *Sowers v. Sowers,* 5th Dist. Licking No. 00CA3, 2000 WL 968807, in which we affirmed a trial court's determination that had found that the wife was entitled to a credit of $12,500 for payment of husband's premarital debt of $25,000, where marital assets were used to pay off this preexisting debt. We found the trial court had not abused its discretion in ordering this distribution of property. Appellant also cites our decision in *Tilmant v. Tilmant,* 5th Dist. Knox No. 2004CA000024, 2005-Ohio-5939. In *Tilmant,* the marital residence had two mortgages,

the second being an equity line of credit in the amount of $60,113.53. The trial court found that the husband had used $19,208.83 of the second mortgage loan to pay off his separate premarital debts. The trial court determined that one-half of that amount, or $9,604.41, should be considered as husband's separate debt, and therefore set off that amount from husband's separate premarital interest in the marital residence. *Id.* at ¶ 15. We affirmed, holding the trial court had properly exercised its discretion. *Id.* at ¶ 33.

{¶28}. We note in both *Sowers* and *Tilmant*, the trial court had allowed the credits or set-offs against the party responsible for the premarital debt, and we affirmed in both cases under an abuse-of-discretion standard. However, the procedural situation here is different, in that the trial court sub judice declined to grant any credit in appellant's favor. Appellant urges that we mandate such a credit, yet she has provided no case law in which an appellate court has concluded a trial court abused its decision in failing to effectively re-characterize such a premarital debt. Upon review, we are not inclined to substitute our judgment on this point for that of the trial court in exercising its discretion to craft an equitable division of property under the circumstances of this case.

*Payments to Appellee's Adult Children*

{¶29}. Appellant also argues that payments during the marriage to trusts for his adult children born of his previous marriage (approximately $105,000.00), as well as payments to an adult daughter who has cerebral palsy (approximately $104,000.00), should also have been cause for appellant to receive a credit in the distribution of property.

{¶30}. However, the trial court carefully considered this issue and determined that the financial transfers to his adult children were part of a plan in place prior to the

marriage of appellant and appellee, and they were not done in an attempt to evade the proper distribution of property in the present divorce. See Magistrate's Decision at 4. Furthermore, as appellee suggests in his response brief, it would further complicate the task of property division to encourage litigants in divorce cases to argue, absent cases of financial misconduct, that solo expenditures during the marriage, such as gifts to family members, vacations or items only enjoyed by one spouse, or other expenses of which one spouse disapproves, should necessarily result in a greater share of the marital estate to one side.

{¶31}. Upon review of the trial record, and viewing the award in its entirety, we do not find the trial court abused its discretion in assessing the testimony and in dividing the parties' property, as urged by appellant.

{¶32}. Appellant's Second Assignment of Error is therefore overruled.

III.

{¶33}. In her Third Assignment of Error, appellant contends the trial court abused its discretion in deciding the amount and duration of spousal support awarded to her. We disagree.

{¶34}. A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. *See Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶35}. R.C. 3105.18(C)(1)(a) through (n) provides the factors that a trial court is to review in determining a spousal support obligation:

{¶36}. "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

{¶37}. "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."

{¶38}. While R.C. 3105.18(C)(1), *supra*, does set forth fourteen factors the trial court must consider, if the court does not specifically address each factor in its order, a reviewing court will presume each factor was considered, absent evidence to the contrary. *Carroll v. Carroll,* Delaware App.No. 2004-CAF-05035, 2004-Ohio-6710, ¶ 28, citing *Watkins v. Watkins,* Muskingum App. No. CT 2001-0066, 2002-Ohio-4237 (additional citations omitted).

{¶39}. In the case sub judice, the magistrate ordered spousal support to appellant in the amount of $10,670.00 per month for a term of eighteen months. After adjusting for prior support received by appellant during the pending case, the magistrate ordered a sum of $137,730.84 payable in twelve monthly installments of $11,477.57 per month, beginning September 1, 2013, finding "[t]he terms of payment are equitable in view of the distortion of this matter by the undue delay in the proceedings." Magistrate's Decision at 9. The trial court approved and adopted this calculation.

{¶40}. The essential facts going to the issue of spousal support listed in the decision are not in significant dispute. As of the time of the divorce, appellant was 47 years old; appellee was 58. Both were in good health, and both had been through a prior marriage. The children born of said prior marriages had all reached adulthood. Appellant has an associate's degree from Kent State University and has taken real estate classes. Her prior job at GE averaged $20,993.00 per year for the years 2006 through 2007; she left that job after the birth of the parties' daughter and has not become re-employed. Appellee is the owner of a plating company. His personal income averaged $367,000.00 per year over a three-year period. The trial court, via its adoption

of the spousal support portion of the magistrate's decision, found the parties' standard of living during the marriage to be comfortable.

{¶41}. Although the present income disparity is readily apparent in this instance, the trial court concluded that appellant "has resources, ability and potential to be self-supporting," but that appellee had fewer income-producing years left. Magistrate's Decision at 9. The court noted that appellant owns a mortgage-free premarital residence in Lake Cable (being used as a rental property) and owns a 2009 Buick with no debt on the vehicle. In addition, the court found that appellant's claimed living expenses were "grossly inflated." *Id.* Finally, the court duly found that the marriage of sixty-three months, with separation after forty-three months, was not long-term. *Id.*

{¶42}. It has been aptly recognized that "[w]hile each case is unique, and hard and fast rules are not applicable, courts generally award spousal support for lengthy periods *after marriages of long duration*." *Barrientos v. Barrientos*, 3rd Dist. Hancock No. 5–12–13, 2013-Ohio-424, ¶ 36 (emphasis added). Upon review of the record, we are unpersuaded the trial court abused its discretion in adopting the magistrate's award of spousal support to appellant of $11,477.57 per month to be paid over twelve months under the facts and circumstances of this case.

{¶43}. Appellant's Third Assignment of Error is therefore overruled.

IV.

{¶44}. In her Fourth Assignment of Error, appellant argues that the trial court abused its discretion in setting a date for appellant to vacate the marital residence. We disagree.

{¶45}. In dividing property in a divorce, a court attempts to disentangle the parties' economic partnership so as to create finality to the marriage. *See Smith v. Smith,* Franklin App. No. 95APF06–719, 1995 WL 771441, citing *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292. Furthermore, we have frequently recognized that an appellant, in order to secure reversal of a judgment, must generally show that a recited error was prejudicial to her. *See Tate v. Tate,* Richland App.No. 02–CA–86, 2004–Ohio–22, ¶ 15, citing *Ames v. All American Truck & Trailer Service* (Feb. 8, 1991), Lucas App. No. L–89–295.

{¶46}. In the final decree of December 2, 2013, the trial court, rather than compelling appellant to move immediately from the marital residence, gave appellant an opportunity until February 15, 2014 to find another place to live. The record establishes that appellant owns another home in Lake Cable which is her premarital separate property. We find the order in question afforded her the additional right of remaining in the marital home for a period of time after the final decree. Appellant does not articulate why the setting of the post-decree date to vacate the marital residence would constitute prejudicial error and does not suggest what relief would be sought upon remand from this Court.

{¶47}. Appellant's Fourth Assignment of Error is therefore overruled.

V.

{¶48}. In her Fifth Assignment of Error, appellant argues that the trial court abused its discretion in determining the value of certain "mixed assets." We disagree.

{¶49}. We reiterate that as an appellate court, we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an

abuse of discretion standard. *Cherry*, *supra*. Furthermore, we have long expressed our reluctance to engage in piecemeal review of individual aspects of a property division taken out of the context of the entire award. *See Harper v. Harper* (Oct. 11, 1996), Fairfield App.No. 95 CA 56, citing *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 459 N.E.2d 896.

{¶50}. Appellant focuses on three assets, all of which were found to have marital property values but which were awarded to appellee in the property division: (1) A 1998 Piper Archer airplane, valued at $15,319.00 in the decree; (2) an aircraft hangar, "Unit 72," valued at $8,946.00 in the decree; and (3) a T-51 Mustang airplane (jointly built by appellee and his father), valued at $8,485.00 in the decree.

{¶51}. During the trial, appellee called Richard Craig, CPA, to the stand to analyze and separate the marital property and separate property component for these assets, for which some marital funds had been expended in the form of loan repayments or other transfers. *See* Tr. at 90-102. Appellant had the opportunity to present evidence to challenge Mr. Craig's conclusions or present her own expert, but she instead utilized a reasonable strategy of extensive cross-examination of his calculations. *See* Tr. at 102-150. Upon review, although appellant at trial zealously argued for different accounting methodologies regarding the two aircraft and the hangar, and continues to do so in the present appeal, we find the trial court's acceptance of the valuations presented by the accounting expert Mr. Craig was not arbitrary, unreasonable or unconscionable.

{¶52}. Appellant's Fifth Assignment of Error is therefore overruled.

{¶53}. For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is hereby affirmed.


By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.


JWW/d 1106