[Cite as *White v. White*, 2016-Ohio-2997.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JUDITH WHITE | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| MICHAEL WHITE | : | Case No. 15-CA-54 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Domestic Relations Division,
                                Case No. 2014-DR-01224


JUDGMENT:                       Affirmed/Reversed in Part and
                                Remanded


DATE OF JUDGMENT:               May 13, 2016


APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

ANDREW S. GROSSMAN                      DAVID A. BARTH
JOHN H. COUSINS IV                      35 South Park Place
32 West Hoster Street                   Suite 201
Suite 100                               Newark, OH  43055
Columbus, OH  43215

*Farmer, P.J.*

{¶1} Appellant, Judith White, and appellee, Michael White, were married on September 24, 1994. Three children were born as issue of the marriage, to wit: Michael born February 23, 1996, Lindsay born April 20, 1998, and Colin born December 10, 2004. On October 17, 2014, appellant filed a complaint for divorce.

{¶2} A hearing commenced on May 19, 2015. Appellant alleged financial misconduct on the part of appellee, claiming appellee dissipated or concealed more than $1.4 million in marital funds from 2009 to 2014. By judgment entry decree of divorce filed June 19, 2015, the trial court granted the parties a divorce and divided the parties' marital property. The trial court found appellee had not engaged in financial misconduct. A nunc pro tunc entry was filed on July 23, 2015 to correct a scrivener's error in the June 19, 2015 entry.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶4} "THE TRIAL COURT ABUSED ITS DISCRETION AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN REFUSING TO COMPENSATE APPELLANT BASED ON APPELLEE'S FINANCIAL MISCONDUCT."

II

{¶5} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY INEQUITABLY DIVIDING THE MARITAL ESTATE WITHOUT CONSIDERING THE LIQUIDITY OF APPELLANT'S ASSETS OR THE TAX CONSEQUENCES OF ITS DIVISION."

III

{¶6}   "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DIVIDING APPELLANT'S SUPPLEMENTAL RETIREMENT ACCOUNT."

I

{¶7}   Appellant claims the trial court erred in finding appellee had not engaged in financial misconduct.  Appellant claims the trial court imposed an incorrect burden on her and its decision was against the manifest weight of the evidence.  We disagree.

{¶8}   On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.  In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley* at ¶ 21.  "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)."  *Id.* at ¶ 19.

{¶9}   We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison,* 49 Ohio St.3d 182 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility

of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶10} R.C. 3105.171 governs division of marital property. Subsection (E)(4) states: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

{¶11} Appellant argues her "burden" to establish financial misconduct by appellee is to show that the disappearance of the funds "was the product of 'knowing wrongdoing' that interfered with the complaining spouse's property rights." Appellant's Brief at 9. Appellant argues the complaining spouse need not "prove the current whereabouts of assets that have disappeared, or the precise purpose for which they were taken." *Id.* at 8.

{¶12} In general civil litigation, the party asserting a proposition has the burden to prove it by a preponderance of the evidence which is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Black's Law Dictionary* 1182 (6th Ed.1990).

{¶13} Appellant argues and cites to treatises that point out many times in concealment of assets cases, the finding or tracing of the financial misconduct requires a crystal ball and creates an impossible burden. Therefore, "Ohio courts routinely recognize that it is unnecessary (and often impossible) to locate what has disappeared, and instead look to whether the *offending* spouse can sufficiently account for dissipated,

concealed, or fraudulently disposed assets." Appellant's Brief at 9. In support of this argument, appellant cites to this court's opinion in *Shalash v. Shalash,* 5th Dist. Delaware No. 121CAF 11 0079, 2013-Ohio-5064. We disagree that we departed from the preponderance of evidence rule in *Shalash,* wherein we specifically referenced our decision in *Kilpatrick v. Kilpatrick,* 5th Dist. Delaware No. 10 CAF 09 0080, 2011-Ohio-443. In *Kilpatrick* at ¶ 29-30, this court stated the following:

> The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. *Boggs v. Boggs,* Delaware App. No. 07 CAF 02, 2008-Ohio-1411 at paragraph 73, citing *Babka v. Babka* (1992), 83 Ohio App.3d 428, 615 N.E.2d 247.
>
> Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Bucalo v. Bucalo,* Medina App. No. 05CA0011-M, 2005-Ohio-6319. The burden of proving financial misconduct is on the complaining party. *Gallo v. Gallo,* 2002-Ohio-2815, Lake App. No.2000-L-208.

{¶14} Appellant further cites to our decision in *Sano v. Sano,* 5th Dist. Stark No. 2010CA00252, 2011-Ohio-21, however, the financial misconduct claim therein was post-divorce filing and contrary to a specific trial court order.

{¶15}  Based upon our consistent view that the entire burden of proving financial misconduct rests upon the complaining spouse, we are not inclined to embrace appellant's argument that the burden shifts to appellee.

{¶16}  We note each determination on financial misconduct rests on the facts and circumstances of each case.  *Orwick v. Orwick,* 7th Dist. Jefferson No. 04 JE 14, 2005-Ohio-5055.  As such, the trier of fact is given the duty to determine the credibility of each party's assertions in determining financial misconduct.

{¶17}  In support of her argument, appellant presented the testimony and report of an expert, Brian Russell, a Certified Public Accountant, an Accredited Business Valuation Specialist, and a Certified Valuation Analyst.  T. at 144; Plaintiff's Exhibit 30(A).  Mr. Russell explained the scope of his investigation as follows (T. at 148-149):

Q. Okay.  Tell me and---and by telling me, tell the Court, what was your project?  What did we ask you to---to undertake?

A. You asked me to analyze the bank records of Judy White and trace distributions from a particular bank account, the Chase money market savings number 8374 and to trace withdrawals or distributions from that account that were directed into Michael White's Chase checking account number 5945.

Q. Okay.  And how did you go about that project?

A. I went about that project by gathering the actual underlying bank statements for both of those accounts and then reading the statements and the dates of the transactions for each individual period that were covered in

my analysis, which covers the period from January 2008 through April of 2014, and prepared a related schedule, one that identifies funds that were distributed out of Mrs. White's number 8374 into Mr. White's number 5945. And I---I then did some subsequent identification of specific transactions within Mr. White's account number 5945 that are…

{¶18} The 8374 money market account was a joint account. T. at 159. Although Mr. Russell traced funds from this account to appellee's checking account 5945 for the years 2008 to 2014, he only had access to appellee's account statements from January 2012 to January 2015. T. at 155; Plaintiff's Exhibit 30(A). Mr. Russell testified from January 25, 2008 to April 9, 2014, the amount of money transferred from the joint account to appellee's account was over $1.4 million, with the first actual transfer into appellee's account occurring on February 27, 2009. T. at 160. Appellee's use of the transferred funds was only traced from December 2011 to January 2015. T. at 165-168. These transaction included ATM cash withdrawals of $77,603, checks totaling $313,445, and credit card payments of $126,022, for a total of $517,069. T at 166. None of the tracing included the years 2008 to 2011. T. at 167. Mr. Russell stated there was no evidence for him to opine that appellee had secreted funds "in some secret bank account someplace," and he could not say "whether or not the monies that were taken out were spent for a valid marital purpose." T. at 171, 172.

{¶19} Although Mr. Russell claimed missing documentation, i.e., appellee's checking account statements from 2008 to 2011, appellant's discovery request only

asked for the "last three years," December 2011 to January 2015. T. at 154-155, 173; Plaintiff's Exhibit 30(A).

{¶20} Plaintiff's Exhibit 30(E) indicates appellee expended $161,193.45 for two businesses in Nicaragua. These expenditures were made within the year of the filing of the divorce complaint, and by stipulation and agreement, appellant gave up her claim of financial misconduct on any monies related to Nicaragua. T. at 780-784.

{¶21} The trial court made an extensive analysis on the issue of financial misconduct and we reach the same conclusions relative to Mr. Russell's testimony. *See* June 19, 2015 Judgment Entry at 45-48. We find the trial court's observations are supported in the record.

{¶22} We note appellee specifically denied secreting funds, and claimed the transfers he made covered household expenses. T. at 572, 574-575. The claimed financial misconduct of $1.4 million amounted to approximately $200,000 per year over a six year period. There is no indication the expenditures were outside the very lavish living expenses of the family. T. at 580-584.

{¶23} Appellant supported her expenditures with exhibits, also claiming household expenses. T. at 206; Defendant's Exhibits A-H. She stated she was aware of the transfers appellee was making out of the joint savings account, but was unaware of the extent of the monies that were transferred. T. at 203-204, 209. For over six years, appellant claims a lack of knowledge of the monies expended by appellee, but never took an active role in determining the purpose and whereabouts of the funds. T. at 338, 389. Appellant now argues appellee's actions were intentional to keep her from getting an equal share of their marital property. T. at 210. To justify this conclusion, appellant

pointed to the Nicaragua expenses. T. at 211-212. As stated above, appellant negotiated away those expenses later in the trial. T. at 780-784. Appellant testified to appellee's potential family inheritance ("a twenty million dollar estate"), which would negate his need to hide money. T. at 212-215.

{¶24} Apart from having to decide on the "he said/she said" issue of who paid household expenses, the trial court was left with very little to find financial misconduct. The trial court was the judge of credibility and appellant failed to substantiate the tracing of funds from 2008 to 2011.

{¶25} Upon review, we find the trial court did not abuse its discretion in finding against appellant on the issue of financial misconduct.

{¶26} Assignment of Error I is denied.

II

{¶27} Appellant claims the trial court erred by inequitably dividing the marital property. Specifically, appellant claims the trial court did not account for the costs associated with the sale of her stocks and bonds to facilitate an equalization, and the award of the entire Morgan Stanley account to appellee violated a stipulated agreement on the issue. We agree as to both issues.

{¶28} As held by the Supreme Court of Ohio in *Neville v. Neville,* 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5:

> In any divorce action, the starting point for a trial court's analysis is
> an equal division of marital assets. R.C. 3105.171(C); see, also, *Cherry v.*
> *Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 421 N.E.2d 1293.

However, R.C. 3105.171(C) clearly provides that where an equal division would be inequitable, a trial court may not divide the marital property equally but instead must divide it in the manner that the court determines to be equitable. In order to determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F). Since a trial court has broad discretion in the allocation of marital assets, its judgment will not be disturbed absent an abuse of discretion.

{¶29} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶30} R.C. 3105.171 governs the division of marital property. Subsections (C)(1) and (2) and (F) state the following, respectively:

(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.

(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶31} In its judgment entry filed June 19, 2015, the trial court ordered appellant to pay appellee $122,285.87 as an equalization payment. The trial court found appellant "has sufficient funds in the bank accounts, stocks and bonds awarded in the divorce to satisfy this obligation." The trial court did not account for an allowance for the costs and taxes associated with a liquidation of any stocks and bonds. As explained by our brethren from the Tenth District in *Meeks v. Meeks,* 10th Dist. Franklin No. 05AP-315, 2006-Ohio-642, ¶ 32:

In making a division of marital property, a trial court must consider all factors enumerated in R.C. 3105.171(F). *Casper v. DeFrancisco* (Feb. 19, 2002), Franklin App. No. 01AP-604. R.C. 3105.171(F)(6) requires the court to consider the tax consequences of the property division upon the respective awards to be made to each spouse, and (F)(7) requires the court to consider the costs of any sale if it is necessary that an asset be sold to effectuate an equitable distribution of property. In the present case, it is apparent the trial court desired to divide the value of the marital portion in the two properties evenly to achieve an equitable distribution. However, failing to take into account the impact the tax consequences would have on the proceeds when the properties are sold would render the trial court's division inequitable. See *Terry v. Terry* (1994), 99 Ohio App.3d 228, 233, 650 N.E.2d 184 (a trial court must consider the costs associated with a sale of assets in order to insure an equitable distribution of property); *Day v. Day* (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201 (where an asset is to be

liquidated the tax consequences must be considered); *Herrmann v. Herrmann* (Nov. 6, 2000), Butler App. No. CA99-01-006 (when a trial court's order forces a party to dispose of an asset to meet an obligation imposed by the court, the court must consider the tax consequences).

{¶32} We agree with appellant's argument as does appellee. We find the trial court abused its discretion in not providing an amount to appellant for the costs and taxes associated with liquidation.

{¶33} As for the Morgan Stanley account, at the commencement of the trial, numerous stipulations were made including the value of the account as of March 31, 2015 ($320,000) and an agreement that said value was marital property. T. at 38-39. However, an agreement was not reached regarding a $100,000 distribution from the account to appellant in April 2015, i.e., martial versus separate property. T. at 39-40. The trial court acknowledged the value of the marital property in the account was an issue for trial. T. at 41, 80.

{¶34} After a great amount of testimony concerning appellee's Nicaragua investments as financial misconduct, the parties reached the following agreement (T. at 782-783):

THE COURT: One, you get whatever is in Nicaragua now and forever. She gets the Morgan Stanley stocks, the remaining value is what we agreed upon. I'll actually read off the number here to make sure there's no dispute.

MR. WOLINETZ: It's approximately two hundred and twenty thousand dollars.

\*\*\*

MR. BARTH: …make that three twenty. Barry, he was going to make that three twenty and then not do the offset I thought.

THE COURT: I have it down it has a value of three hundred and twenty thousand nine hundred and fifty-one dollars and seventy-four cents. It's marital. We split it fifty/fifty. There is no offset for the hundred thousand dollars. You're responsible for paying your own taxes. And she will forego any financial misconduct claims involving Nicaragua, such as the web page, the money to Mann, the travel trips, whatever they are. However, other claims related to financial misconduct, which I believe is the one point four million and perhaps some other ones, that is not being given up and she--- they will still argue for that. Is that correct? Mr. Wolinetz, did I---did I accurately…

MR. WOLINETZ: Yes.

THE COURT: Okay. Do you agree to that, Mr. White?

MR. WHITE: I suppose you can always appeal your decisions so, yes, I agree.

{¶35} The trial court disregarded this agreement and credited appellant with the entire $320,951.74, thereby increasing her share of the marital estate. As a result, appellant lost her agreement on the Nicaragua investments and did not receive the benefit

of the stipulated agreement.  Appellee concedes this issue.  Appellee's Brief at 14.  We note as cited above, the parties agreed to "no offset for the hundred thousand dollars."

{¶36}  We find the trial court abused its discretion in not honoring the stipulated agreement relative to the Morgan Stanley account.

{¶37}  Assignment of Error II is granted.  The trial court is to reconsider the equalization of the marital property and equally divide the Morgan Stanley account per the agreed stipulation.

III

{¶38}  Appellant claims the trial court erred in ordering her supplemental retirement plan to be divided via a QDRO.  Appellee does not argue the issue.  Appellee's Brief at 14.

{¶39}  Assignment of Error III is granted.  The trial court is to distribute the supplemental retirement plan per the equalization requirement of R.C.3705.171(C)(1).

{¶40} The judgment of the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division is hereby affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, P.J.

Gwin, J. and

Wise, J. concur.

SGF/sg 422